## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### LITTLE ROCK DIVISION

**CAPITAL CASE**

**MARCEL WILLIAMS**                                                          **PLAINTIFF**

**v.**                         **Case No. 5:17-cv-00103 KGB**

**WENDY KELLEY,** *et al.*                                                   **DEFENDANTS**

### ORDER

Plaintiff Marcel Williams brings this "as applied" challenge under 42 U.S.C. § 1983 and the Eighth Amendment of the United States Constitution to the state of Arkansas's lethal injection protocol. Mr. Williams and eight other inmates serving on death row in Arkansas brought a "facial" challenge to Arkansas's lethal injection protocol in a separate action before this Court. *See McGehee v. Hutchinson,* No. 4:17-cv-00179 (E.D. Ark. filed March 27, 2017). Plaintiffs filed *McGehee* on March 27, 2017. Mr. Williams, who is scheduled to be executed on April 24, 2017, filed this action along with a motion for a preliminary injunction on April 11, 2017. Before the Court is Mr. Williams' motion for a preliminary injunction (Dkt. No. 3).

The Court held an evidentiary hearing on Mr. Williams' motion for a preliminary injunction on April 21, 2017. The parties agreed to incorporate the record and all exhibits received during the Court's evidentiary hearings conducted in *McGehee*. The Court heard additional testimony and received additional exhibits related to Mr. Williams' as applied challenge at the April 21, 2017, hearing. Mr. Williams called as witnesses Dr. Joel Zivot, who testified at the Court's hearing in *McGehee*, as well as Director Wendy Kelley. Dr. Zivot reviewed all of Mr. Williams' medical records and conducted an in person examination of Mr. Williams on March 23, 2017. In reaching its determination on Mr. Williams' motion for a preliminary injunction, the

Court considered all of the testimony and evidence presented at the Court's evidentiary hearings in *McGehee*, the attachments to the parties' pleadings and filings in this action, and the testimony and evidence offered at the Court's evidentiary hearing in this action.

## I.       Legal Standard

When determining whether to grant a motion for preliminary injunction, this Court considers:  (1) the threat of irreparable harm to the movant; (2) the movant's likelihood of success on the merits; (3) the balance between the harm to the movant and the injury that granting an injunction would cause other interested parties; and (4) the public interest.  *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013) (quoting *Dataphase Sys. Inc. v. CL Sys.,* 640 F.2d 109, 114 (8th Cir. 1981)).  In cases where condemned inmates seek "time to challenge the manner in which the State plans to execute them[,]" plaintiffs must show "a significant possibility of success on the merits." *Jones v. Hobbs*, 604 F.3d 580, 581 (8th Cir. 2010) (internal quotation marks omitted) (quoting *Hill v. McDonough,* 547 U.S. 573, 584 (2006)).  Preliminary injunctive relief is an extraordinary remedy, and the party seeking such relief bears the burden of establishing the four *Dataphase* factors.  *Watkins Inc. v. Lewis,* 346 F.3d 841, 844 (8th Cir. 2003).  The focus is on "whether the balance of the equities so favors the movant that justice requires the court to intervene to preserve the *status quo* until the merits are determined."  *Id*.  Furthermore, before granting a request for stay of an execution, a "district court must consider not only the likelihood of success on the merits and the relative harms to the parties, but also the extent to which the inmate has delayed unnecessarily in bringing the claim, which counsels against the entry of an equitable remedy."  *Nooner v. Norris*, 491 F.3d 804, 808 (8th Cir. 2007) (quoting *Nelson v. Campbell*, 541 U.S. 637, 649-50 (2004) (internal quotation marks omitted)).

## II. Discussion

The Court denies Mr. Williams' motion for a preliminary injunction (Dkt. No. 3). A court considering a stay of execution must "apply 'a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.'" *Hill*, 547 U.S. at 584 (quoting *Nelson*, 541 U.S. at 650). That same equitable standard applies to this as-applied challenge. *See Johnson v. Lombardi*, 809 F.3d 388, 389 (8th Cir. 2015) (reciting the *Hill* standard when denying a motion for stay of execution based on an as-applied challenge to the method of execution).

Because that standard applies to as-applied challenges, and given the Eighth Circuit's decision in *McGehee*, which is binding on this Court, this Court feels compelled to observe that Mr. Williams' "use of 'piecemeal litigation' and dilatory tactics is sufficient reason by itself to deny a stay." *McGehee v. Hutchinson*, No. 17-1804, 2017 WL 1404693, at *2 (8th Cir. Apr. 17, 2017), *cert. denied* (Apr. 21, 2017) (per curiam) (quoting *Hill*, 547 U.S. at 584-85). This Court recognizes, however, that the Eighth Circuit may confine that determination to the facial challenge in *McGehee* and except from it the as-applied challenge here, given the nature of the as applied inquiry into an inmate's specific medical condition when execution is imminent. *See Bucklew v. Lombardi*, 783 F.3d 1120, 1127 (8th Cir. 2015) (citing *Siebert v. Allen*, 506 F.3d 1047, 1050 (11th Cir. 2007)).

As a result, the Court will proceed with its analysis. The Court also finds that, in the light of the Eighth Circuit's decision in *McGehee*, Mr. Williams failed to offer sufficient evidence to show that there is a significant possibility that he will succeed on the merits of his method of execution claim.

### A. Diligence In Bringing This Action

On April 18, 2017, the Court entered a Show Cause Order, directing Mr. Williams to show cause why this Court should not find, consistent with the Eighth Circuit's decision in *McGehee*, that this action must be dismissed (Dkt. No. 24). Mr. Williams filed a timely response to the Court's Show Cause Order (Dkt. No. 25). Mr. Williams argues that he was not dilatory in filing his as applied claim on April 11, 2017, because:

1. His as-applied claim is analogous to a competency claim under *Ford v. Wainwright*, 477 U.S. 399 (1986)[,]" meaning he "was not dilatory in bringing the instant action because an as-applied challenge should ripen with an execution date" (*Id.*, at 1-2);

2. His "diabetes, hypertension, and obesity are fluid conditions" meaning "the risks of the lethal-injection protocol should be assessed at the time his execution is imminent" (Dkt. No. 25, at 3); and

3. He was first diagnosed with Obstructive Sleep Apnea on March 23, 2017, during his examination with Dr. Zivot.

Even assuming that Mr. Williams is correct that his claim did not become ripe until Governor Hutchinson set his execution date on February 27, 2017, that his physical condition should be evaluated when execution is imminent, and that he was first diagnosed with Obstructive Sleep Apnea on March 23, 2017, the Court finds that Mr. Williams was not diligent in bringing this action. Mr. Williams filed a facial challenge to the lethal injection protocol on March 27, 2017. Dr. Zivot examined Mr. Williams on March 23, 2017, before the complaint in *McGehee* was filed (Dkt. No. 1, at 360). Mr. Williams could and should have brought his as applied claim earlier than April 11, 2017. He provides no good reason for why his as applied claim could not

4

have been included in *McGehee* or been filed at the same time as *McGehee*. The Court finds that

Mr. Williams has split his claims and has not been diligent in pursuing his as applied claims.

Mr. Williams also argues that the Court should excuse his lack of diligence because

"Defendant Wendy Kelley has recently taken actions that show that she concedes the risks

particular to Mr. Williams in the lethal-injection protocol" (Dkt. No. 25, at 4). Mr. Williams

contends that:

> [O]n April 15, 2017, Mr. Williams was taken from his cell and brought to a room where his veins were examined by a nurse in the presence of the Director. He was asked by the Director to sign a waiver allowing them to place a device in his arm in order to gain venous access. Exhibit 2. This is an admission that the current lethal-injection protocol is insufficient to provide venous access in Mr. Williams. These actions by the defendant amount to "concession[s]" that there is a "substantial risk of serious and imminent harm that his sure or very likely to occur." *See* [*Bucklew v. Lombardi*, 783 F.3d 1120, 1127 (8th Cir. 2015).] These actions by the defendant elevate the likelihood of a risk apart from the facial challenge in *McGehee v. Hutchinson* and warrant additional fact-finding by this Court.

(*Id.*, at 4-5). The Court rejects this argument. During the Court's evidentiary hearing in this action,

Director Kelley testified that the ADC's execution policies provide that all condemned inmates

must be physically evaluated in the days prior to an execution to locate possible infusion sites.

Director Kelley testified that Mr. Williams was inspected for a possible infusion site just like any

other inmate. Based on this unrebutted testimony, the Court finds that Director Kelley's inspection

does not excuse Mr. Williams' lack of diligence in bringing this action.

### B.    Significant Possibility Of Success

Even if Mr. Williams was diligent in bringing this action, as a result of the Eighth Circuit's

decision in *McGehee*, the Court would deny his motion for a preliminary injunction. Challenges

to a state's method of execution under the Eighth Amendment are analyzed under a two-prong test

established by the Supreme Court in *Baze v. Rees*, 553 U.S. 35 (2008), and *Glossip v. Gross*, 135

S. Ct. 2726 (2015). Plaintiffs have the burden of proving that "the State's lethal injection protocol

5

creates a demonstrated risk of severe pain" and "the risk is substantial when compared to the known and available alternatives." *Glossip*, 135 S. Ct. at 2737 (citing *Baze*, 553 U.S. at 61).  Under the first prong of *Glossip*, Mr. Williams must show that "the method presents a risk that is '*sure or very likely* to cause serious illness and needless suffering, and give rise to 'sufficiently *imminent* dangers.'"  *Id.* (citing *Baze*, 553 U.S. at 50).  Under the second prong of *Glossip*, Mr. Williams must offer an alternative method that is "'feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain.'"  *Id.* (quoting *Baze*, 553 U.S. at 52).

Mr. Williams has the burden of establishing both prongs of *Glossip* in this as applied challenge.  *See Johnson v. Lombardi*, 809 F.3d 388, 391 (8th Cir.), <u>cert. denied,</u> 136 S. Ct. 601, 193 L. Ed. 2d 480 (2015) (considering both prongs of *Glossip* in an as-applied action); *but see Bucklew v. Lombardi*, 783 F.3d 1120, 1129 (8th Cir. 2015) (Bye, J., concurring in the result) ("[E]ven assuming the Court is correct a death row inmate in a facial challenge must identify an alternative method of execution, a death row inmate in an as-applied challenge is not required to do so.").  The Court addresses the second prong of *Glossip* first.  *Bucklew*, 783 F.3d at 1128 ("'The District Court will have the usual authority to control the order of proof, and if there is a failure of proof on the first element that it chooses to consider, it would not be an abuse of discretion to give judgment for [defendants] without taking further evidence.'") (quoting *Helling v. McKinney,* 509 U.S. 25, 35 (1993)).

### 1.      Alternative Method Of Execution

The Court finds that Mr. Williams failed to establish that there is a significant possibility that he could show that there is an alternative method of execution that is "'feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain.'"  *Glossip*, 135 S. Ct. at 2737 (quoting *Baze*, 553 U.S. at 52).  In *McGehee*, the Eighth Circuit established that for

an alternative method of execution to be available under *Glossip*, "the State must have access to the alternative and be able to carry out the alternative method relatively easily and reasonably quickly." *McGehee v. Hutchinson*, 2017 WL 1404693, at \*3 (citing *Arthur v. Comm'r, Ala. Dep't of Corr.*, 840 F.3d 1268, 1300 (11th Cir. 2016), *cert. denied*, 137 S. Ct. 725 (2017)). The Eighth Circuit determined that plaintiffs failed to meet their burden at the preliminary injunction stage because the availability of their proposed alternatives was "too uncertain to satisfy the rigorous standard under the Eighth Amendment." *Id.*

In this case, Mr. Williams does not identify any alternative methods of execution in addition to those suggested in *McGehee* (Dkt. No. 2, at 11-14). He did not offer additional evidence pertaining to his proposed alternative methods during this evidentiary hearing. Mr. Williams offers additional safeguards, which he contends "the State could easily establish to prevent violating his Eighth Amendment right to be free from cruel and unusual punishment" (Dkt. No. 4, at 9). However, Mr. Williams does not establish how these additional safeguards would "in fact significantly reduce a substantial risk of severe pain." *Baze*, 553 U.S. 35 at 52. Therefore, in the light of the Eighth Circuit's findings in *McGehee*, which are binding on this Court, Mr. Williams has not met his burden, at this stage, of establishing the second prong of *Glossip*.

### 2.    Severe Pain

In *McGehee*, the Eighth Circuit found that this Court's "factual findings would not support a conclusion that the prisoners have a likelihood of success in showing that the execution protocol is sure or very likely to cause severe pain." *McGehee*, 2017 WL 1404693, at \*2. Going further, the Eighth Circuit found that "[t]he equivocal evidence recited by the district court falls short of demonstrating a significant possibility that the prisoners will show that the Arkansas protocol is 'sure or very likely' to cause severe pain and needless suffering." *Id.*, at \*3. The Court finds that

Mr. Williams fails to offer sufficient evidence in addition to the evidence already presented to establish a significant possibility that he could successfully show that Arkansas's execution protocol, as applied to him, is sure or very likely to cause severe pain.

Dr. Zivot testified that, in his opinion, midazolam would likely "not work" on Mr. Williams because Mr. Williams has sleep apnea. Dr. Zivot testified that he diagnosed Mr. Williams as suffering from sleep apnea after giving him a questionnaire on March 23, 2017. Dr. Zivot opined that, if given midazolam, it is very likely that Mr. Williams would react differently from other condemned inmates, as he could choke, cough, struggle to breathe, or vomit. Dr. Zivot also testified that it would be difficult to place an IV on Mr. Williams because of his weight, that the consciousness check may not be effective because of Mr. Williams' neuropathy, and that the amount of potassium chloride called for in Arkansas's lethal injection protocol may be insufficient to stop Mr. Williams' heart, because Mr. Williams might have "chronically low" levels of potassium due to medications he is taking, meaning the amount of potassium given to Mr. Williams may not raise the potassium level to the point where his heart should stop.

Based on the Eighth Circuit's decision in *McGehee*, the Court finds that Dr. Zivot's testimony, in addition to the evidence already considered by this Court in *McGehee*, "falls short of demonstrating a significant possibility that [Mr. Williams] will show that the Arkansas protocol is 'sure or very likely' to cause severe pain and needless suffering." *Id.*

### III.    Conclusion

Mr. Williams' motion for a preliminary injunction is denied (Dkt. No. 3).

So ordered this 21st day of April, 2017.

_____
Kristine G. Baker
United States District Judge